IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

YOUNG HUI KIM; GLORY OF        )       CIVIL NO. 18-00168 JAO-KSC
GOD PRESBYTERIAN CHURCH;       )
PACIFIC EAGLE REALTY LLC,      )
                               )       ORDER AFFIRMING
                 Plaintiffs,   )       BANKRUPTCY COURT'S ORDER
                               )       GRANTING TRUSTEE'S MOTION
           vs.                 )       FOR ORDER APPROVING
                               )       SETTLEMENT AGREEMENT
DANE S. FIELD, CHAPTER 7       )
TRUSTEE; JULIA RIIHIMAKI,      )
                               )
                 Defendants.   )
_____  )

ORDER AFFIRMING BANKRUPTCY COURT'S ORDER GRANTING
TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT
AGREEMENT

## I.  INTRODUCTION

Young Hui Kim ("Kim"), Glory of God Presbyterian Church, and Pacific

Eagle Realty LLC (collectively "Appellants") appeal the Order Granting Trustee's

Motion for Order Approving Settlement Agreement Regarding Settlement of

Claims and Purchase of Property of the Estate, Filed on March 7, 2018

("Settlement Approval Order") issued by Bankruptcy Judge Robert J. Faris on

April 23, 2018.  Dane S. Field, Chapter 7 Trustee ("the Trustee") and Julia

Riihimaki ("Riihimaki") (collectively "Appellees") contend the Settlement

Approval Order should be affirmed.

For the reasons stated below, the Court AFFIRMS the Settlement Approval

Order.

## II. BACKGROUND

Kim, pastor of the Glory of God Presbyterian Church and owner of Pacific

Eagle Realty LLC, and Riihimaki have a long history of business and personal

dealings together.  Kim and Riihimaki sued each other in state court for various

causes of action largely stemming from alleged fraudulent real estate transactions.

*See* Adv. Doc. No. 2 at 10.[1]  In October 2014, while the litigation between Kim and

Riihimaki was still pending, Kim filed for Chapter 7 bankruptcy.  *Id.*; Bk Doc. No.

1.  Riihimaki filed an adversary proceeding in Kim's bankruptcy case seeking a

determination that certain of the debts and damages alleged in the state court

proceeding were non-dischargeable.  Adv. Doc. No. 2.  Kim filed a counterclaim

against Riihimaki in the adversary proceeding ("the Riihimaki Claim").  *See* Adv.

Doc. No. 377.  To account for the Riihimaki Claim in her bankruptcy case, Kim

amended her bankruptcy schedule to list the Riihimaki Claim, and indicated it was

---

[1] The Court refers to docket entries in the underlying bankruptcy matter as "Bk. Doc. No. __."  The Court refers to the docket entries in the adversary proceeding in the underlying bankruptcy matter as "Adv. Doc. No. __."

worth $252,000.  *See* Bk. Doc. No. 53.

In or around July of 2015, Kim's attorney settled all of the claims in the adversary proceeding with Riihimaki (the "2015 Settlement Agreement")—both Riihimaki's claims against Kim, and Kim's counterclaim against Riihimaki.  *See* Adv. Doc. No. 245.  The substance of the agreement was that Riihimaki would be awarded a judgment against Kim in the amount of $1,350,000, with $650,000 of that award being nondischargeable in Kim's bankruptcy proceeding.  *See Id.* at 5. It also required Kim or her codefendants to make two cash payments of $30,000 and $28,450 to Riihimaki.  It further stated that the agreement would be subject to review and approval from the Trustee and the bankruptcy court, and that both Kim and Riihimaki would join efforts in seeking to approve the 2015 Settlement Agreement with the bankruptcy court and the Trustee.  SER at 491.[2]

In November of 2015, Riihimaki moved to enforce the 2015 Settlement Agreement.  Adv. Doc. No. 83.  Kim opposed enforcement of the 2015 Settlement Agreement, disputing that she ever agreed to the settlement and arguing that her attorney settled the claim without her consent.  *See* Adv. Doc. No. 245 at 12.  In February 2017, the bankruptcy court found, over Kim's opposition, that Kim was fully aware of the terms of the 2015 Settlement Agreement and had legally

_____

[2] The Court refers to Riihimaki's supplemental excerpts of record as "SER."

consented to it.  *See Id*.  Based on that conclusion, the bankruptcy court held that the 2015 Settlement Agreement was valid and enforceable.  *Id.* at 16; Adv. Doc. No. 247 at 2.

In ruling to enforce the 2015 Settlement Agreement, the bankruptcy court noted that Kim's claims against Riihimaki were "all property of her bankruptcy estate under the exclusive control of the bankruptcy trustee."  Adv. Doc. No. 245 at 15.  Thus, the bankruptcy court held that Kim did not have the authority—absent the Trustee's or court's approval—to settle her own claims.  Ultimately, the bankruptcy court held that the 2015 Settlement Agreement "is an enforceable contract," but would "leave for another day the question whether the conditions to its effectiveness can be satisfied."  *Id.* at 16.

After the bankruptcy court determined in the adversary proceeding that the 2015 Settlement Agreement was valid and enforceable, but subject to court and Trustee approval, the Trustee entered into a new settlement agreement that again resolved the Riihimaki Claim (the "2018 Settlement Agreement").  Although it is unclear whether the parties knew this at the time, they now concede that the claims against Riihimaki settled by the Trustee in the 2018 Settlement Agreement are the same claims that were already settled in the 2015 Settlement Agreement.  *See*

Appellants' Br. at 3 ("The Riihimaki Claim was articulated in the Counterclaim . . . in Adversary Proceeding No. 15-90001."); Appellants' Reply Br. at 6 ("[T]he Counterclaim . . . is the claim being settled[.]"); Adv. Doc. No. 388 (dismissing the Riihimaki Claim with prejudice under *both* the 2015 Settlement Agreement and the 2018 Settlement Agreement). The 2018 Settlement Agreement, negotiated by the Trustee, relinquishes any of Kim's claims against Riihimaki for the following consideration: (1) Riihimaki pays the estate $15,000; (2) Riihimaki files an amended proof of claim, reducing her proof of claim against Kim's bankruptcy estate to a $1,360,000 unsecured claim; and (3) Riihimaki releases her Notice of Pendency of Action ("NOPA") previously recorded against one of Kim's properties. *See* Bk. Doc. No. 251 at 13.

On March 7, 2018, the Trustee sought approval of the 2018 Settlement Agreement, and Kim objected on the grounds that the Trustee's motion did not provide sufficient evidence that the settlement was fair and equitable. *See* Bk. Doc. No. 251, 256. The Trustee filed a reply on April 2, 2018. Bk. Doc. No. 257. Oral argument was held on April 9, 2018. ER[3] at 190–95. Judge Faris presided over both the bankruptcy case and adversary proceeding, and as such, was familiar

---

[3] The court cites to Appellants' Excerpts of Record as "ER."

with the parties and their contentions.  He approved the 2018 Settlement

Agreement orally.  ER at 192–93.  The Settlement Approval Order was issued on

April 23, 2018.  Bk. Doc. No. 266.  Kim timely filed this appeal on  May 7, 2018.

## III.  STANDARD OF REVIEW

A district court sitting in appellate jurisdiction over a bankruptcy court's

order under 28 U.S.C. § 158(a)(1) applies the same legal standard as a federal court

of appeals.  *In re Crystal Props. Ltd.*, 268 F.3d 743, 755 (9th Cir. 2001).  This

generally requires that a district court review a bankruptcy court's findings of fact

for clear error and its conclusions of law de novo.  *See In re Kimura*, 969 F.2d 806,

810 (9th Cir. 1992).  When reviewing a bankruptcy court's order approving a

settlement, however, district courts review the order for an abuse of discretion.  *See*

*In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1065 (9th Cir. 2001);

*In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986).

## IV.  DISCUSSION

### A.    Appellees' Requests for Judicial Notice

Before addressing the merits of the appeal, the Court first addresses

Appellees' requests for judicial notice.  Appellees request that the Court take

judicial notice of (1) a NOPA recorded against one of Kim's properties by appellee

Riihimaki; and (2) two documents filed in the underlying bankruptcy case that were not designated by the parties to be included in the record on appeal. Appellee Trustee's Br. at 3 n.2, 7 n.3; Appellee Riihimaki's Br. at 18 n.9. Appellants did not object to the requests for judicial notice. The Court addresses these requests in turn.

Under Federal Rule of Evidence 201, a court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Courts must take judicial notice "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). On appeal, courts will generally not take judicial notice of documents that were not before the lower court. *See U.S. ex Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *In re Brown & Cole Stores, LLC*, 375 B.R. 873, 876 n.5 (B.A.P. 9th Cir. 2007).

First, regarding the request that the Court take notice of the NOPA, the NOPA does not appear to have ever been before the bankruptcy court in the underlying proceeding. The copy of the NOPA submitted with Appellee's filing was not a version that was ever filed in the bankruptcy court, and the parties do not identify where in the underlying bankruptcy proceeding the NOPA was filed.

Normally, a reviewing court "will not supplement the record on appeal with material not considered by the trial court." *Daly-Murphy v. Winston*, 837 F.2d 348, 351 (9th Cir. 1987). Therefore, the Court declines to take judicial notice of the NOPA.

Second, Appellees request that this Court take judicial notice of two related documents filed in the bankruptcy court—documents 59 and 60.[4] These two documents were part of the bankruptcy court's record and their accuracy cannot reasonably be questioned.[5] Therefore, the Court takes judicial notice of them.

Although the Court takes judicial notice of these documents, the Court notes that their relevance to this appeal is minimal at best. Bankruptcy document 59 is the Trustee's request for an examination of Kim, including interrogatories and requests for production of documents, under Federal Rule of Bankruptcy Procedure 2004. Bankruptcy document 60 is merely the bankruptcy court's order granting

---

[4] The Trustee requests judicial notice of bankruptcy documents 59 and 6. But document 6 is an application to "employ Klevansky Piper, LLP as General Counsel" and is not relevant to this appeal. The Trustee described bankruptcy document 6 as "the Order Granting the Motion for 2004 Examination," which is actually a description of document 60. The court assumes the Trustee meant to request judicial notice of documents 59 and 60, the same documents of which Riihimaki requested judicial notice.

[5] Bankruptcy document 60 is merely an electronic order within the docket that was already made part of the record under Fed. R. Bankr. P. 8009(a)(4).

the motion. Neither document contains Kim's answers to the interrogatories and document requests propounded. Moreover, the relevant interrogatories, as well as Kim's answers to the relevant interrogatories, were already part of the record, submitted with the Trustee's reply in his motion to approve the settlement. *See* Bk. Doc. No. 257.

**B.  The Bankruptcy Court Did Not Abuse its Discretion in Finding that the Settlement Was Fair and Reasonable**

The Court now turns to the merits of the appeal. Under Federal Rule of Bankruptcy Procedure 9019, a bankruptcy court may approve a trustee's settlement of a debtor's claim upon a motion by the trustee. To approve the settlement, the bankruptcy court must determine, in an informed and independent manner, if the settlement is fair and equitable. *See A & C Props.*, 784 F.2d at 1381, 1383. Courts consider four factors in determining whether the settlement is fair and equitable: (1) the probability of success of the litigation; (2) the potential difficulties in collecting a judgment if the claims were to be successful; (3) the complexity of the litigation, and the expense, inconvenience, and potential delay associated with it; and (4) the proper deference to the reasonable interests of the creditors. *Id.* at 1381. "As long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be

affirmed." *Id.* Approval of a settlement "absent a sufficient factual foundation which establishes that it is fair and equitable" constitutes an abuse of discretion. *Id.* at 1383.

### 1. The Factual Basis for the Settlement Approval Order

Appellants' primary argument is that the bankruptcy court abused its discretion by approving the settlement without a sufficient factual basis to determine whether the settlement was fair and equitable. Appellants point out that in moving for the Settlement Approval Order, including the reply briefing, the Trustee attached only the 2018 Settlement Agreement at issue, Kim's relevant interrogatory responses related to the claim, and a short, conclusory declaration by the Trustee that the settlement was reasonable. Appellants contend that these documents alone do not constitute a sufficient factual basis to approve the settlement. The bankruptcy court, however, relied on more than just what was supplied by the parties in their briefing on the settlement approval: at the April 9, 2018 hearing, Judge Faris stated that his approval of the settlement was based also on the adversary proceedings between Appellant Kim and Appellee Riihimaki as well as the oral testimony of Kim. ER at 192–93.

Appellants appear to contend—without citation—that a bankruptcy court can rely only on records submitted with the motion to approve the settlement. *See* Appellants' Br. at 3; Appellants' Reply Br. at 4, 6. However, during oral argument, counsel for appellants conceded that a bankruptcy court can rely on the record in the underlying bankruptcy case, and is not limited to evaluating only the submissions accompanying the Trustee's motion to approve the settlement. Substantial caselaw supports the bankruptcy court's reliance on more than just what the parties submitted. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968) ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of *all facts necessary* for an intelligent and objective opinion." (emphasis added)); *A & C Props.*, 784 F.2d at 1383 (approving settlement agreement where bankruptcy court made "independent evaluation from the trustee's application and settlement agreement, *and from the rest of the proceedings before it*" (emphasis added)). Other district courts have noted the relevance of a bankruptcy court's familiarity with the claims and underlying proceedings to affirm approval orders. *See, e.g., In re Richmond Produce Co., Inc.*, No. C-93-0390-EFL, 1993 WL 470434 at *4, 1993 U.S. Dist.

LEXIS 16171 at *13 (N.D. Cal. Nov. 10, 1993) (relying on the bankruptcy court's "intimate[] familiar[ity] with the litigation" to affirm approval of settlement).

Here, the bankruptcy court relied on sufficient factual underpinnings to make an informed and independent decision on the reasonableness of the settlement. The bankruptcy court had before it the 2018 Settlement Agreement, Kim's relevant interrogatory responses (responding to requests that she identify why she believed she had a $252,000 claim against Riihimaki and how she calculated the amount), the adversary proceeding between Kim and Riihimaki (which included the very claim at issue), and Kim's live testimony in the bankruptcy proceeding. The bankruptcy court approved the settlement after noting that it had considered all of the *A & C Properties* factors. ER at 192–93. The bankruptcy court thus had an ample factual basis to approve the settlement here, because the sources before the bankruptcy court were sufficiently probative of the factors to be considered.

Appellants also contended during oral argument that even if the record is sufficient to uphold the approval, the bankruptcy court failed to make a sufficiently detailed explanation of why, under the *A & C Properties* factors, the record before it supported approval of the settlement. Appellants argued that there could be no

meaningful appellate review without a sufficiently detailed analysis documented by the bankruptcy court, and therefore, the approval must be overturned—apparently so that the bankruptcy judge could document its findings more fully, and in turn, the appellate court could review the determination more readily. The Court recognizes there is some limited merit to appellants' argument. However, while appellate review is certainly easier if the analysis below is thoroughly detailed in the record, reversal is not necessary where the record itself is sufficient to affirm. *See A & C Props.,* 784 F.2d at 1383 ("Appellate review is made more difficult by the lower court's failure to write an opinion explaining why it deemed the compromise to be fair, reasonable and adequate. However, where the record supports approval of the compromise, the bankruptcy court should be affirmed." (citation omitted)). Further, the amount of available information and complexity of the claims being settled will vary from case to case, and as such, bankruptcy courts' explanations will necessarily also vary in depth. The bankruptcy court here provided an adequate oral explanation, and stated that it had considered all of the *A & C Properties* factors. *See* ER 192–93. Moreover, because the record here "supports approval of the compromise," the bankruptcy court must be affirmed. *See A & C Props.*, 784 F.2d at 1383.

Turning next to the *A & C Properties* factors, the Court concludes that the bankruptcy court did not abuse its discretion in approving the settlement.

## 2. The Probability of Success of the Litigation

### a. Procedural and Factual History of the Litigation

The procedural and factual history of this case shows why the litigation has little likelihood of success. The adversary proceeding, which was brought by Riihimaki to adjudicate whether certain debts and damages allegedly due to Riihimaki were dischargeable in Kim's bankruptcy proceeding, is particularly relevant here. As admitted by Appellants, the claim noted on Kim's bankruptcy schedules was the same claim Kim had already brought as a counterclaim against Riihimaki in the adversary proceeding. *See* Appellants' Br. at 3; Appellants' Reply Br. at 6. Thus, the claim at issue here was already being litigated before the bankruptcy court in the adversary proceeding. While bankruptcy courts do not need to hold "mini-trials" to determine whether a settlement is reasonable, *see In re Blair*, 538 F.2d 849, 851–52 (9th Cir. 1976), that is essentially what happened here.

The bankruptcy court was therefore certainly familiar with Kim's claims against Riihimaki. *See* ER 192–93. In approving the settlement, Judge Faris noted that from what he had seen in the adversary proceeding between the parties, "a lot

seems to turn on oral statements of who said what to whom." *Id*. at 193. Claims based on conflicting assertions of oral statements are often difficult to prove without documentary evidence. As explained more fully below, Kim has provided no documentary evidence supporting her claims.

### b. Kim's Interrogatory Responses

Kim's convoluted and uncorroborated interrogatory responses further demonstrate why the claim is unlikely to succeed. The interrogatory requests asked Kim to identify both the basis for her claim against Riihimaki, as well as how she calculated the claim to be worth $252,000. ER at 133–35. Kim's response (prepared with assistance of counsel) is very difficult to follow. It is a narrative story detailing a lengthy history between Kim and Riihimaki, alleging egregious conduct that could give rise to numerous causes of action and criminal charges. It does not clearly state what claims Kim is asserting, nor the pertinent facts for each claim. The response also fails to provide a mathematical or logical basis for her

allegation that the claim is worth $252,000.[6]  Indeed, there does not appear to be any documentary evidence supporting the claims.  Kim's inability to provide a consistent, coherent, and logical basis for why she has a successful claim against Riihimaki reflects a lack of probability of success of the litigation.

### c. Kim's Live Testimony

The bankruptcy court also properly pointed to Kim's live testimony in approving the settlement, explaining that relying on Kim's testimony to pursue the claims would be a "challenge."  ER at 193:7–11.[7]  Riihimaki argues that the bankruptcy court's statement that Kim's testimony would be a "challenge"

---

[6] Kim's interrogatory response appears to allege that Riihimaki only paid Kim a portion of a $750,000 sale of property.  She states:

> If Mrs. Riihimaki were to properly credit me for the $95,000-plus that I paid to her, and taking into account the $300,000 credit to her for the down payment on the Kaneohe Property . . . and the approximately $200,000 in payments she made to my creditors at the time of the Haleiwa-Kaneohe property exchange, based on a purchase price of $750,000 for the Haleiwa Property she still owes me approximately $255,000.

ER at 135.  The numbers alleged do not add up to a balance of $255,000.

[7] Although none of the parties provided the Court with a transcript of Kim's testimony, it would certainly be probative of the probability of success of the litigation, given that Kim would likely be the primary witness in her claims against Riihimaki, as the bankruptcy court noted.

demonstrates that the bankruptcy court did not believe Kim's live testimony and found her untrustworthy. *See, e.g.*, Appellee Riihimaki's Br. at 42–43. Appellants, on the other hand, argue that the bankruptcy court did not explicitly state or imply that Kim was untruthful, and that this Court should not conclude that Kim is not a credible witness.

Without a transcript of Kim's testimony, the Court cannot independently determine that Kim is not a credible witness. However, the Court need not do so. In reviewing the record, there is no reason to conclude that the bankruptcy court abused its discretion in characterizing Kim's testimony as a "challenge." Indeed, the Bankruptcy Appellate Panel affirmed the bankruptcy court's order enforcing the 2015 Settlement Agreement and interpreted the bankruptcy court's evaluation of Reverend Kim's testimony as implying that she was not credible. *See* Adv. Doc. No. 353 at 17:18–18:5. Thus, the bankruptcy court's determination that Kim's live testimony supported the reasonableness of the settlement should not be disturbed on appeal. Whether Kim's testimony demonstrated the unlikelihood of success of the litigation or the likely complexity, delay and expense involved—another of the *A & C Properties* factors—the bankruptcy court's reliance on her testimony to assess the

reasonableness of the settlement was not an abuse of discretion, and provided

additional support for the bankruptcy court's ruling.

### d. Kim's Lack of Documentary Evidence

The lack of documentary evidence corroborating Kim's claims against

Riihimaki further supports a conclusion that Kim is unlikely to prevail in litigation.

Appellants argue that because the Trustee had the burden of persuasion on his

motion to approve the settlement, the fact that Kim has not presented any evidence

buttressing her claim against Riihimaki is immaterial.  This argument is

unpersuasive.  The lack of documentary evidence supporting Kim's claims is itself

evidence that the claims are unlikely to succeed.  *See In re Bay Area Material*

*Handling, Inc.*, No. C 95-1163 VRW, 1995 WL 729300 at *5, 1995 U.S. Dist.

LEXIS 18241 at *13 (N.D. Cal. Dec. 4, 1995), *aff'd* 111 F.3d 137 (9th Cir. 1997)

(affirming bankruptcy court's settlement approval in part because appellants put

forth no evidence contradicting the conclusions of others that the claim would not

be successful, despite appellants having been involved in the litigation for three

years).  As the plaintiff in her counterclaim against Riihimaki, Kim holds much of

the evidence to prosecute her claim but has presented no documentary evidence to

the courts.  It would be unfair to allow a debtor in this situation to withhold

evidence supporting the claim, and then seek to prevent the settlement of the claim on the basis that there is insufficient evidence to properly evaluate it. The motion to approve the settlement presented Kim with the opportunity to produce any evidence that would support her claim, and thereby further her argument that the settlement value was too low. Kim did not submit any documentary evidence supporting her claims. Under these circumstances, the lack of documentary evidence is itself evidence that the claim is unlikely to succeed.

### e. The Trustee's Statements

Finally, Appellants contend that the bankruptcy court erred in approving the settlement because the Trustee stated that he believed he would be successful in prosecuting Kim's claim against Riihimaki. ER at 101 ("While the trustee believes he would have been successful in litigating the Riihimaki Claim, there is uncertainty in all litigation."). They also point out that the Trustee took a different position in his reply briefing, where he stated that it was unclear whether the claim would be successful. ER at 126. Appellants argue that these statements do "not favor compromising a $252,000 claim for $15,000." Appellants' Br. at 7.

However, the Trustee's opinion is not at issue. The bankruptcy court must assess the factors independently, and cannot simply rubber stamp the Trustee's

proposed settlement.  *See A & C Props.*, 784 F.2d at 1383.  Thus, the bankruptcy court must assess whether the litigation is likely to be successful independently, and may come to a different conclusion.  Moreover, the likelihood of success of the litigation is only one of the *A & C Properties* factors.  As such, the bankruptcy court did not abuse its discretion by approving the settlement despite the Trustee's statement that he believed he would succeed in the litigation.

### 3.  The Potential Difficulties in Collecting a Judgment

The Court agrees with Appellants that there was an insufficient factual basis in the record to ascertain whether collecting a judgment against Riihimaki would be difficult if the claims were successful.  Appellants also point out that Riihimaki's judgment against Kim is probative of this factor, because Riihimaki could likely pay for a judgment against her by offsetting the judgment against Kim.

However, this factor must be weighed together with the other factors, and here, secondarily to the probability of success of the litigation.  *See In re W. Funding Inc.*, 550 B.R. 841, 851 (B.A.P. 9th Cir. 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017) ("Each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation.").  As the probability of a

litigation's success decreases, so too does the relevance of whether a judgment would be collectible. Thus, even if the Court were to assume that there would be no difficulty in collecting on a judgment against Riihimaki, the bankruptcy court did not abuse its discretion in light of the other factors.

### 4. The Complexity of the Litigation, and the Expense, Inconvenience, and Potential Delay Associated with It

Although there does not appear to be any direct calculation of how much time or expense it would cost the Trustee to litigate the claims, the record available to the bankruptcy court demonstrated a factually complex and difficult case to litigate. The bankruptcy court noted that the litigation was largely a case of competing oral testimony between Kim and Riihimaki. ER at 193. This would surely increase the Trustee's costs and time to litigate the claims, and would thus lower the amount that the Trustee would reasonably accept in a settlement.

Appellants take a contrary position. Appellants contend that even a "cursory review of the Interrogatory Answers demonstrated that [Kim's claim against Riihimaki] is a rather simple run-of-the-mill contract-type claim." Appellants' Br. at 9. The Court disagrees. The interrogatory responses allege many things, including fraud, defamation, extortionary conduct, theft of property, breaches to

various contracts that appear to be solely oral in nature and entered into or modified under duress, and even threats of murder. *See* ER at 133–35. The responses do not, however, allege facts suggesting a "rather simple run-of-the-mill" breach of contract claim. Furthermore, contrary to Appellants' brief, nowhere in the interrogatory responses does Kim allege that Riihimaki breached "a settlement agreement" between them. *Compare* Appellants' Br. at 9 *with* ER at 133–35.

### 5. The Proper Deference to the Reasonable Interests of the Creditors

Providing proper deference to the reasonable interests of the creditors further supports the conclusion that the settlement was fair and equitable. No creditor objected to the settlement. Appellants, the only objectors, are not creditors in Kim's bankruptcy proceeding. Nonetheless, Appellants argue that settling a $250,000 claim for $15,000 is not sufficient value for the creditors. *See* Appellants' Br. at 10. However, because the claims appear to have a very low probability of success, even a $15,000 settlement may have been a reasonable settlement for these claims.

Moreover, the agreement here provides substantial consideration beyond the $15,000 payment. *See* ER at 105–06. The 2018 Settlement Agreement requires that Riihimaki reduce her claim against the estate by more than $2,500,000—down to $1,362,917. *See* Bk. Doc. No. 251 at 13; Appellants' Br. at 10. Appellants argue

that this reduction should not be considered a benefit to the estate because this was

essentially the identical consideration Riihimaki agreed to in the 2015 Settlement

Agreement. This argument is wholly unconvincing, however, because Riihimaki

only agreed to the reduction in the 2015 Settlement Agreement in exchange for

Kim's dismissal of her claims against Riihimaki. Thus, to the extent that Riihimaki

was already required to reduce her claim against the estate, so too was Kim already

required to dismiss her claims against Riihimaki, in which case there would be no

further litigation of the Riihimaki Claim, and there would be no 2018 Settlement

Agreement at all. Indeed, it appears that the only reason the 2015 Settlement

Agreement did not completely terminate the Riihimaki Claim is because the

bankruptcy court held that only the Trustee, not Kim, could dismiss the claim

against Riihimaki. Finally, Riihimaki also agreed to release her NOPA against one

of Kim's properties, providing even further value to the estate.

Additionally, the 2018 Settlement Agreement negotiated by the Trustee

provides the estate with more value than the 2015 Settlement Agreement. Further,

since Kim was the most knowledgeable of her own claims, her willingness to settle

her claims for a particular amount is evidence that such an amount is reasonable.[8]
The 2015 Settlement Agreement essentially provided the estate only with the
reduction of Riihimaki's claim, but did not include the $15,000 payment, or the
release of the NOPA.  *See* Adv. Doc. No. 245 at 5–6; SER at 484–91.  The 2018
Settlement Agreement provides even greater value for the claims, and sufficient
value to the creditors to support the bankruptcy court's approval of the settlement.

## V.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the bankruptcy court's
Settlement Approval Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, November 27, 2018.

Jill A. Otake
United States District Judge

Civil No. 18-00168 JAO-KSC; *Kim v. Field*; ORDER AFFIRMING BANKRUPTCY COURT'S
ORDER GRANTING TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT
AGREEMENT

---

[8] The Court understands that the question of Kim's awareness of the terms of the
settlement is in dispute.  In any event, the fact that her lawyers supported the
settlement also demonstrates its reasonableness.